**Kenneth STRAWBERRY, Appellant,**

v.

**Madeleine ALBRIGHT, Secretary, U.S. Department of State, Appellee.**

**No. 96–5221.**

United States Court of Appeals, District of Columbia Circuit.

May 2, 1997.

Eric H. Holder, Jr., United States Attorney, R. Craig Lawrence and Darya Geetter, Assistant United States Attorneys, Washington, DC, were on the motion for summary affirmance, for appellee.

Barbara B. Hutchinson, Cass City, MI, was on the response to the motion for summary affirmance, for appellant.

Before: WALD, WILLIAMS, and TATEL, Circuit Judges.

## ON MOTION FOR SUMMARY AFFIRMANCE

PER CURIAM.

Kenneth Strawberry appeals an order granting summary judgment for the Secretary of State in this age discrimination dispute. Strawberry asserts that the Secretary violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by "forcing" him to retire at age 65. Because Strawberry elected to participate in a retirement system with a statutorily-mandated retirement age of 65 and because the Secretary's compliance with the statute does not violate the ADEA, we grant the Secretary's motion for summary affirmance.

## I. BACKGROUND

In February 1984, Strawberry was mandatorily converted from a Foreign Service Reserve position to a civil service position because he was not available for worldwide assignment. Under 22 U.S.C. § 4156(b), Strawberry had the option of remaining in the Foreign Service Retirement and Disability System ("FSRDS") or transferring to the Civil Service Retirement and Disability System ("CSRS"). He chose to remain in the FSRDS, which provides a more generous annuity and allows earlier voluntary retirement, *see id.* §§ 4046, 4051, but has a mandatory retirement age of 65, *see id.* § 4052.

After Congress established the Foreign Service Pension System ("FSPS") in 1986, Strawberry had a choice between remaining in the FSRDS or transferring to the FSPS. The FSPS offers a slightly smaller annuity, but provides Social Security coverage and allows participation in the Thrift Savings Plan. In October 1987, Strawberry transferred to the FSPS, which incorporates the FSRDS's mandatory retirement provision. *See id.* § 4071d(a)(1).

Strawberry was due to retire on July 31, 1995, the last day of the month in which he turned 65. However, he sought a waiver of mandatory retirement under § 4052(b), which allows the Secretary to retain an employee on active service if she determines it to be in the public interest. The Secretary denied the waiver request, and Strawberry retired as scheduled on July 31, 1995.

In October 1995, Strawberry filed suit in district court alleging that the Secretary had violated the ADEA by forcing him to retire at 65. Strawberry sought reinstatement, backpay, damages, and a jury trial.[1] The district court granted the Secretary's motion for summary judgment in June 1996. The court noted that the Foreign Service Act of 1980 maintained the mandatory retirement provision of the Foreign Service Act of 1946 but raised the mandatory retirement age from 60 to 65, and that the Federal Employees' Retirement System Act of 1986 made the mandatory retirement age applicable to the FSPS. The court then held:

> Longstanding principles of statutory interpretation hold that, where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one. This is particularly so when the specific statute is enacted at the same time as, or after, a more general provision. The enactments of 1980 and 1986, each of which post-date[s] the ADEA and specifically provide[s] for the mandatory retirement of Foreign Service employees, must be given full force and effect. The ADEA's general prohibition of age discrimination cannot be read to prevent the implementation of the mandatory retirement provisions of the Foreign Service Act.

6/4/96 Memorandum at 3 (citations omitted). This appeal followed.

## II. ANALYSIS

■ Strawberry argues that the mandatory retirement age of 65 applies only to those in the Foreign Service, not to those who were converted to civil service positions. He first asserts that "§ 4052 provides that 'members of the Foreign Service' shall be retired at age sixty-five." Response to Motion for Summary Affirmance at 2. He next asserts that the legislative history of § 4052

---

1. The Secretary moved to strike the request for damages and a jury trial, arguing that 42 U.S.C. § 1981a (the authority cited by Strawberry) does not apply to ADEA claims. The district court did not rule on the motion, and Strawberry does not raise the matter on appeal.

shows that Congress intended that the mandatory retirement age apply to members of the Foreign Service serving in overseas posts, and that neither the Foreign Service Act of 1980 nor the Federal Employees' Retirement System Act of 1986 required that any other employees retire at age 65. Indeed, he contends that the FSPS "specifically removed employees such as Mr. Strawberry from the [FSRDS] which required mandatory retirement at age sixty-five." Response to Motion for Summary Affirmance at 3. Strawberry adds that his forced retirement was contrary to the requirement that participants in the FSPS be treated like participants in the Federal Employees' Retirement System ("FERS"). This argument appears to be based on the fact that FERS does not include the mandatory retirement age contained in the FSRDS and FSPS. Finally, he argues that a mandatory retirement age of 65 renders the FSPS "superfluous," although the basis for this argument is not entirely clear. *See* Response to Motion for Summary Affirmance at 4–5.

Strawberry's arguments are meritless. Section 4052(a) does not state that "members of the Foreign Service" shall be retired at age 65, as Strawberry asserts. Rather, it provides that, with an exception not relevant here, "any participant [in the FSRDS] shall be retired from the Service" at age 65. While participation in the FSRDS was originally generally limited to those in the Foreign Service, *see* 22 U.S.C. § 4043, the Foreign Service Act of 1980 allowed those who converted to civil service positions to "elect in writing to continue to participate in the [FSRDS] instead of the [CSRS] so long as [they are] employed in an agency which is authorized to utilize the Foreign Service personnel system." *Id.* § 4156(b)(1).

Strawberry does not identify any part of the Act or any other statutory provision affirmatively exempting from the FSRDS's mandatory retirement provision those who converted to civil service positions but elected to remain in the FSRDS. Rather, he seems to suggest that these employees are not subject

to the mandatory retirement provision because § 4052(a) refers only to the Foreign Service, not to the civil service. However, § 4052(a) naturally refers only to retirement from the Foreign Service, since it is part of the Foreign Service Retirement and Disability System. (Section 4051, the voluntary retirement provision, likewise refers only to retirement "from the Service.") We cannot conclude that, in allowing Strawberry and others to participate in the FSRDS although they no longer held Foreign Service positions, Congress intended to exempt them from the burdens imposed on other FSRDS participants while affording them the same benefits. Instead, we hold that Strawberry and others who elected to continue their participation in the FSRDS remained subject to the terms of the FSRDS, including the mandatory retirement provision.

Strawberry subsequently transferred from the FSRDS to the FSPS, established under the Federal Employees' Retirement System Act of 1986. However, the Act provides that *"[a]ny participant* [in the FSPS] may be retired under the conditions specified in section 4051 of this title and *shall be retired under the conditions specified in sections 4052* and 4053 of this title and receive benefits under this part." *Id.* § 4071d(a)(1) (emphasis added). Thus, those who elected to participate in the FSPS remain subject to § 4052's mandatory retirement age.

■ Because Strawberry did not raise the argument below, we need not address his contention that applying the mandatory retirement age to FSPS participants is inconsistent with the requirement that FSPS participants be treated like FERS participants. *See, e.g., District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1084 (D.C.Cir.1984).[2] However, we note that § 4071(b) states that,

[e]xcept as otherwise specifically provided in this part or any other provision of law, the provisions of chapter 84 of Title 5 shall apply to all participants in the [FSPS] and such participants shall be treated in all

---

2. Strawberry likewise did not argue below that applying the mandatory retirement age renders the FSPS superfluous. The basis for this argument is unclear and, to the extent that the argument differs from Strawberry's FERS-based argument, we need not address it in light of his failure to raise it below.

respects similar to persons whose participation in the [FERS] provided in that chapter is required (emphasis added).

As noted above, § 4071d(a)(1) specifically provides that FSPS participants shall be retired under the conditions stated in § 4052. Thus, applying the mandatory retirement age to FSPS participants is not precluded under § 4071(b), and any resulting difference in the treatment of FSPS and FERS participants is required by the Act itself.

 Finally, the district court correctly held that the mandatory retirement provisions of the 1980 and 1986 Acts do not run afoul of the ADEA. As the district court noted, Congress maintained but increased the mandatory retirement age in 1980 and applied the mandatory retirement age to FSPS participants in 1986. Both actions occurred after the ADEA was made applicable to federal employees. It is well-established that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one...." *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Thus, the district court correctly held that the ADEA's general prohibition of age discrimination does not prohibit enforcement of the mandatory retirement provisions. We therefore grant the Secretary's motion for summary affirmance.

*So ordered.*